IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

                 Plaintiff,

    v.

                                              Civil No. 1:23-cv-00311

TAYLOR FARMS NEW ENGLAND, INC.,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CONSENT DECREE

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................. 2
II.     APPLICABILITY ..................................................................................................... 2
III.    DEFINITIONS .......................................................................................................... 3
IV.     CIVIL PENALTY ..................................................................................................... 5
V.      COMPLIANCE REQUIREMENTS ......................................................................... 6
VI.     REPORTING REQUIREMENTS ........................................................................... 10
VII.    STIPULATED PENALTIES .................................................................................. 11
VIII.   FORCE MAJEURE ................................................................................................ 15
IX.     DISPUTE RESOLUTION ...................................................................................... 17
X.      INFORMATION COLLECTION AND RETENTION ........................................... 20
XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................ 21
XII.    COSTS .................................................................................................................... 23
XIII.   NOTICES ................................................................................................................ 23
XIV.    EFFECTIVE DATE ................................................................................................ 24
XV.     RETENTION OF JURISDICTION ........................................................................ 25
XVI.    MODIFICATION .................................................................................................... 25
XVII.   TERMINATION ..................................................................................................... 26
XVIII.  PUBLIC PARTICIPATION ................................................................................... 26
XIX.    SIGNATORIES/SERVICE .................................................................................... 27
XX.     INTEGRATION ...................................................................................................... 28
XXI.    26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION.................................... 28
XXII.   HEADINGS ............................................................................................................ 28
XXIII.  FINAL JUDGMENT .............................................................................................. 28
XXIV.   APPENDICES ........................................................................................................ 29

WHEREAS, plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action, concurrently with this Consent Decree, alleging that Taylor Farms New England, Inc. ("Defendant") violated various provisions of the Risk Management Program regulations, 40 C.F.R. Part 68, promulgated under Section 112(r)(7) of the Clean Air Act ("CAA"), 42 U.S.C. § 7412(r)(7), as well as Section 312(a) of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11022(a), and the EPCRA regulations, 40 C.F.R. Part 370, with respect to Defendant's food processing facility located in North Kingstown, Rhode Island (the "Rhode Island Facility");

WHEREAS, the Complaint alleges that Defendant operates a refrigeration process at the Rhode Island Facility that uses over 10,000 lbs. of anhydrous ammonia, that the Defendant is subject to the Risk Management Program regulations, and that Defendant violated those regulations;

WHEREAS, the Complaint alleges that Defendant had over 500 lbs. of anhydrous ammonia and sulfuric acid at the Rhode Island Facility, that the Defendant was therefore subject to the EPCRA reporting requirements of 40 C.F.R. Part 370.45(a) and that Defendant violated those requirements by failing to timely and properly file its chemical inventory report for 2020 by March 1, 2021;

WHEREAS, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, will avoid litigation between the Parties, and is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), and over the Parties.  Venue lies in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), and 28 U.S.C. §§ 1391(c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant resides in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.     For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 325(c) of EPCRA, 42 U.S.C. § 11045(c).

## II.  APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Rhode Island Facility or of any of the facilities listed at Appendix 1 ("Affiliated Facilities"), at which work shall be performed pursuant to this Consent Decree, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to the transfer of the Rhode Island Facility, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and DOJ, in accordance with Section XIII (Notices).  Any attempt to transfer ownership or operation of the Rhode Island Facility or Affiliated Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work pursuant to Sections V (Compliance Requirements) and VI (Reporting) of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

III.    DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the CAA or EPCRA or the regulations promulgated under CAA or EPCRA have the meanings assigned to them in the CAA, EPCRA or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

"Affiliated Entities" means those entities listed at Appendix 1, which are corporate affiliates of Defendant;

"Affiliated Facilities" means the facilities listed at Appendix 1, which are operated by the Affiliated Entities, at which certain work shall be performed pursuant to this Consent Decree;

"Complaint" means the complaint filed by the United States in this action;

"Consent Decree" or "Decree" means this Decree and all appendices attached hereto (listed in Section XXIV (Appendices));

"Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

"Defendant" means Taylor Farms New England, Inc.;

"DOJ" means the United States Department of Justice and any of its successor departments or agencies;

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" means the definition provided in Section XIV (Effective Date);

"Paragraph" means a portion of this Decree identified by an Arabic numeral;

"Parties" means the United States and Defendant;

"Refrigeration Consultant" shall mean the independent consultant(s) retained by Defendant to facilitate the updated PHA at the Rhode Island Facility and perform the IIAR 9 audits at the Affiliated Facilities pursuant to Paragraphs 12 and 13 of this Decree;

4

"Rhode Island Facility" means Defendant's food processing facility located in North Kingstown, Rhode Island;

"Section" means a portion of this Decree identified by a Roman numeral;

"United States" means the United States of America, acting on behalf of EPA.

IV.    CIVIL PENALTY

8.    Within 30 Days after the Effective Date, Defendant shall pay the sum of $650,000 as a civil penalty.

9.    Defendant shall pay the civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Rhode Island after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Tama Bistrian
> Chief Accounting Officer
> Taylor Fresh Foods, Inc.
> 831-676-9170 (office)
> 831-901-9310 (mobile)
> Email:  tbistrian@taylorfarms.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XIII (Notices).

10.    At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati

5

Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to DOJ via email or regular mail in accordance with Section XIII (Notices); and (iii) to EPA in accordance with Section XIII (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Taylor Farms New England, Inc.* (D.R.I.) and shall reference the civil action number, CDCS Number and DOJ case number 90-5-1-1-12458.

11.    Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

V.    COMPLIANCE REQUIREMENTS

12.    With respect to the Rhode Island Facility, Defendant shall:

a.    Comply with all requirements of 40 C.F.R. Parts 68 and 370 alleged in the Complaint to have been violated with respect to the Rhode Island Facility. Defendant certifies that, to the best of its knowledge, it has corrected all violations of 40 C.F.R. Parts 68 and 370 alleged in the Complaint to have been violated with respect to the Rhode Island Facility, except to the extent such alleged violations are to be remedied under the terms of this Consent Decree after the date of lodging of this Consent Decree.

b.    PHA Update and Revalidation: By August 6, 2024, Defendant shall conduct a Process Hazard Analysis ("PHA") update and revalidation for the Rhode Island Facility in accordance with the requirements of 40 C.F.R. § 68.67.  The PHA shall be facilitated by an independent consultant with appropriate experience and expertise in conducting PHAs for ammonia refrigeration facilities ("Refrigeration Consultant"), as provided in Paragraph 15.  In addition, the PHA shall:

6

(1)    evaluate hazards commonly involved in ammonia refrigeration processes, and include ventilation, detectors, machinery room construction, and indoor piping in its evaluation, where appropriate;

(2)    as part of evaluating human factors, consider whether existing standard operating procedures, training, and signage are adequate in light of any employee language barriers; and

(3)    evaluate whether the Facility's location in a storm surge evacuation zone and in an area subject to hurricane-force winds poses risks that should be assessed.

c.    Address PHA Recommendations: Defendant shall resolve PHA recommendations in accordance with 40 C.F.R. § 68.67.  By March 31, 2025, Defendant shall submit to EPA a certification from the Refrigeration Consultant that the Rhode Island Facility is in compliance with the requirements of this subparagraph and provide a brief statement describing any changes that have been made to the Facility or its operations as a result of the PHA.  Defendant shall also supply details on the analysis and methodology used to evaluate, pursuant to Paragraph 12.b.2, the adequacy of the standard operating procedures, training, and signage for non-English speakers.

d.    Within one year of the lodging of this Consent Decree, Defendant shall install three ammonia detectors at the condensing towers at the Rhode Island Facility.

7

e.    Emergency Preparedness: Forty C.F.R. 68.93(c) requires Defendant to document its annual coordination activities with emergency planning and response authorities.  For three years, starting on October 31, 2023, Defendant shall submit to EPA a report concerning the coordination activities that have taken place with respect to the Rhode Island Facility during the prior year.

13.    Within one year of the lodging of this Consent Decree, Defendant shall, on behalf of the Affiliated Entities, complete the following work at the Affiliated Facilities:

a.    Following the requirements in paragraph 15, retain one or more Refrigeration Consultants to conduct an evaluation of the ammonia refrigeration system at each Affiliated Facility, pursuant to ANSI/IIAR 9 Standard for Minimum System Safety Requirements for Existing Closed-Circuit Ammonia Refrigeration Systems ("IIAR 9 audits");

b.    Ensure that the IIAR 9 audit at each Affiliated Facility is performed using the template attached as Appendix 2, or such other template that EPA may approve upon Defendant's request;

c.    Ensure that the audit recommendations for each Affiliated Entity are resolved by either implementing them as written, implementing them as modified, or rejecting them.  If the Affiliated Entity modifies or rejects an audit recommendation, the reasons for doing so shall be documented;

d.    Submit to EPA a written report for each IIAR 9 audit, certified by the Refrigeration Consultant, in accordance with Paragraph 16.d, that includes, at a minimum, the filled-in template referenced above,

8

representative photographs, a narrated cell-phone video of the relevant

process equipment, and a discussion of the audit recommendations and

their resolution, including any changes made to the facility or its

operations.

14.    Compliance Tracking System: By six months from the lodging of this Consent

Decree, Defendant shall (a) ensure that the Rhode Island Facility as well as each

of the Affiliated Facilities, is tracking Risk Management Program action items

and EPCRA deadlines through its existing maintenance database or another

database with this functionality and (b) email a confirmation to EPA that such

requirement has been met.

15.    Competency and Expertise Requirements:   Defendant has already selected

several potential Refrigeration Consultants to perform the PHA Update and IIAR 9 audits and

submitted their resumes to EPA. EPA has not objected to any of these Refrigeration Consultants.

Should Defendant wish to use any other consultants, Defendant shall submit resumes to EPA for

review and such Refrigeration Consultants shall meet the following competency and expertise

requirements:

a.    the Refrigeration Consultant has experience conducting process hazard

analyses and audits under Section 112(r) of the CAA,

b.    the Refrigeration Consultant is knowledgeable about the industry codes,

standards, and bulletins that apply to ammonia refrigeration facilities; and

c.    the Refrigeration Consultant has experience designing refrigeration

systems to meet such codes, standards, and bulletins (or has access to

someone who does have such design experience).

9

Defendant may proceed with such Refrigeration Consultants unless EPA objects.

## VI.    REPORTING REQUIREMENTS

16.    Defendant shall submit the following reports to EPA at the addresses set forth at Section XIII (Notices):

      a.    By March 31, 2025, Defendant shall submit a completion report for the Rhode Island Facility and the Affiliated Facilities briefly describing all the actions taken pursuant to Paragraphs 12-15.  These reports shall be certified by the Refrigeration Consultant(s) to verify that work recommended by the IIAR 9 reviews and PHA update was addressed.

      b.    If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify DOJ and EPA of such violation and its likely duration, in writing, within ten business days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII (Force Majeure).

      c.    Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree may pose an immediate threat to

the public health or welfare or the environment, Defendant shall notify EPA by telephone and by email as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

        d.      Each report submitted by Defendant under Sections V (Compliance Requirements) and VI (Reporting Requirements) shall be signed by the Refrigeration Consultant or the Defendant, as applicable, and shall include the following certification:

I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

17.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

18.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.    STIPULATED PENALTIES

19.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force

11

Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

20.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

21.     Compliance Milestones and Reporting Requirements.

a.      The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Sections V (Compliance Requirements) and VI (Reporting Requirements):

Penalty Per Violation Per Day                    Period of Noncompliance

$1,000 ................................................1st through 14th Day
$1,500 .............................................. 15th through 30th Day
$2,500 ................................................31st Day and beyond

(1)     Update of PHA as required by Paragraph 12.b by August 6, 2024.

(2)     Installation of 3 ammonia detectors as required by Paragraph 12.d by one year from the date of lodging.

(3)     Complete IIAR 9 audits and resolve recommendations of those audits, and submit audit reports, as required by Paragraph 13, by one year from the date of lodging.

(4)     Track compliance with Risk Management Program action items and EPCRA deadlines as required by Paragraph 14, by six months from lodging.

12

(5)     Submission of report on PHA, as required by Paragraph 12.c, by March 31, 2025 (can be combined with Completion Report required by Paragraph 16.a, due on the same day).

(6)     Submission of reports concerning coordination with local responders, as required by Paragraph 12.e, by October 31 of 2023, 2024 and 2025.

(7)     Submission of completion report, as required by Paragraph 16.a, by March 31, 2025.

22.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

23.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

24.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

25.     Stipulated penalties shall continue to accrue as provided in Paragraph 22, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

13

b.      If the dispute is appealed to the Court and the United States prevails in
whole or in part, Defendant shall pay all accrued penalties determined by
the Court to be owing, together with interest, within 60 Days of receiving
the Court's decision or order, except as provided in subparagraph c,
below.

c.      If any Party appeals the District Court's decision, Defendant shall pay all
accrued penalties determined to be owing, together with interest, within 15
Days of receiving the final appellate court decision.

26.     Defendant shall pay stipulated penalties owing to the United States in the manner
set forth in Paragraph 9 and with the confirmation notices required by Paragraph 10, except that
the transmittal letter shall state that the payment is for stipulated penalties and shall state for
which violation(s) the penalties are being paid.

27.     If Defendant fails to pay stipulated penalties according to the terms of this
Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in
28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall
be construed to limit the United States from seeking any remedy otherwise provided by law for
Defendant's failure to pay any stipulated penalties.

28.     The payment of penalties and interest, if any, shall not alter in any way
Defendant's obligation to complete the performance of the requirements of this Consent Decree.

29.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States'
exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI
(Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to
seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable

14

law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## VIII.   FORCE MAJEURE

30.     "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  Given the need to protect public health and welfare and the environment, the requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that any delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the greatest extent possible. "Force majeure" does not include financial inability to perform any obligation under this Consent Decree.

31.     If any event occurs for which Defendant will or may claim a force majeure, Defendant shall provide notice by email to EPA.  The deadline for the initial notice is seven days after Defendant first knew or should have known that the event would likely delay or prevent performance.  Defendant shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by Defendant knew or should have known.

32.      Regardless of whether Defendant seeks to assert a claim of force majeure concerning the event, within seven Days after the notice under Paragraph 31, Defendant shall submit a further notice to EPA that includes (a) an explanation and description of the event and its effect on Defendant's completion of the requirements of the Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for Defendant to complete the requirements of the Consent Decree; (d) Defendant's rationale for attributing such delay to a force majeure if it intends to assert such a claim; (e) a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (f) all available proof supporting any claim that the delay was attributable to a force majeure.

33.      Failure to submit a timely or complete notice or claim under Paragraph 31 or 32 regarding an event precludes Defendant from asserting any claim of force majeure regarding that event, provided, however, that EPA may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the event is a force majeure, and whether Defendant has exercised its best efforts, under Paragraph 30.

34.      After receipt of any claim of force majeure, EPA will notify Defendant of its determination whether Defendant is entitled to relief under Paragraph 30, and, if so, the excuse of, or the extension of time for, performance of the obligations affected by the force majeure. An excuse of, or extension of the time for performance of, the obligations affected by the force majeure does not, of itself, excuse or extend the time for performance of any other obligation.

35.      If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's

16

notice.  In any such proceeding, Defendant has the burden of proving that it is entitled to relief under Paragraph 30, that its proposed excuse or extension was or will be warranted under the circumstances, and that it complied with the requirements of Paragraphs 30 - 32.  If Defendant carries this burden, the delay or non-performance at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.    DISPUTE RESOLUTION

36.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section concerning an issue of which it had notice and an opportunity to dispute under this Section prior to an action by the United States to enforce any obligation of Defendant arising under this Decree precludes Defendant from raising any such issue as a defense to any such enforcement action.

37.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date of the Notice of Dispute, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 14 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

17

38.     <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

39.     The United States will send Defendant its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position is binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

40.     <u>Judicial Dispute Resolution</u>.  Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute.  The motion (a) must be filed within 14 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 37, unless the United States raises a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

41.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

42. <u>Standard of Review</u>

    a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  In any dispute brought under Paragraph 38 pertaining to the adequacy or timeliness of the performance of work undertaken pursuant to this Consent Decree, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

    b.     <u>Other Disputes</u>.  In any other dispute brought under Paragraph 38, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree].

43.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 25.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.    INFORMATION COLLECTION AND RETENTION

44.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.     monitor the progress of activities required under this Consent Decree;

      b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      c.     obtain documentary evidence, including photographs and similar data; and

      d.     assess Defendant's compliance with this Consent Decree.

45.     In accordance with 40 C.F.R. § 68.67, Defendant shall keep a copy of the PHA performed for the Rhode Island Facility for the life of the process.  Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, the following documents: (a) documents that must be submitted pursuant to Section V (Compliance Requirements) and Paragraph 16.a; (b) contracts with, and resumes for, the Refrigeration Consultants; and (c) the Refrigeration Consultants' notes, analysis, and draft IIAR 9 audit/PHA reports.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

46.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents,

records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

47.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

48.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

49.     This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

50.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the

rights of the United States to obtain penalties or injunctive relief under the CAA, EPCRA, or their implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 49. The United States further reserves all legal and equitable remedies to address any conditions if there is or may be an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

51.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 49.

52.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, EPCRA, their underlying regulations, or with any other provisions of federal, State, or local laws, regulations, or permits.

53.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

54.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.    COSTS

55.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.    NOTICES

56.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

| | |
|---|---|
| As to DOJ by email[ (preferred)]: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-1-1-12458 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-1-1-12458 |
| As to EPA by email[ (preferred)]: | diercks.tyler@epa.gov with copies to<br>wallace.len@epa.gov and smith.catherine@epa.gov |

As to EPA by mail and telephone:     Tyler Diercks

Waste and Chemical Compliance Section

Enforcement and Compliance Assurance Division

EPA Region 1

5 Post Office Square, Suite 100

Boston, MA 02109-3912

Tel: 617-918-1289

As to Defendant:

John Mazzei

150 Main Street, Suite 400

Salinas, CA 93901

Tel. 831-809-5445

Email:  jmazzei@taylorfarms.com

Mark Borman

150 Main Street, Suite 400

Salinas, CA 93901

Tel.  831-970-3631

Email:  mborman@taylorfarms.com

Phil Bradway

150 Main Street, Suite 200

Salinas, CA 93901

Tel.  (831) 601-5198

Email:  pbradway@taylorfarms.com

57.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

58.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

59.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

24

whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XV.    RETENTION OF JURISDICTION

60.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVI.   MODIFICATION

61.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.  Changes to deadlines for the Defendant's various obligations shall not be viewed as material changes requiring Court approval.

62.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 42, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.   TERMINATION

63.     After Defendant has completed the requirements of Section V (Compliance Requirements), has provided the reports required by Section VI (Reporting Requirements), and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.  The requirements of Paragraphs 45 and 46 shall survive termination of the Consent Decree.

64.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

65.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX (Dispute Resolution).  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 45 Days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

66.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,

improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.  SIGNATORIES/SERVICE

67.    The undersigned representative of the Defendant, the Regional Counsel for EPA Region 1 identified on the EPA signature page below, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, each certifies that he/she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party that person represents to this document.  The undersigned representative of Defendant also certifies that the Affiliated Entities have informed Defendant that: (i) the Affiliated Entities will permit Defendant to act on their behalf to ensure that the work identified in this Decree at the Affiliated Facilities is performed in accordance with the Decree; and (ii) the Affiliated Entities otherwise agree to adhere to the terms of the Decree that apply to the Affiliated Entities.

68.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.    INTEGRATION

69.    This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the subject matter of the Decree herein.

## XXI.    26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

70.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Paragraphs 5, 12-15, 16.a, 16.b, 16.d, 44, 45 and 46 is restitution, remediation, or required to come into compliance with law.

## XXII.    HEADINGS

71.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXIII.    FINAL JUDGMENT

72.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXIV. APPENDICES

73.    The following Appendices are attached to and part of this Consent Decree:

"Appendix 1" is the list of Affiliated Facilities and Affiliated Entities.

"Appendix 2" is the IIAR 9 template.


Dated and entered this  13  day of  September , 2023.

_WESmith_

_____
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:


Todd Kim
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

_7/11/23_
Date

Donald G. Frankel
Senior Counsel
Scott Bauer
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611
617-947-9590


Zachary A. Cunha
United States Attorney


Kevin Hubbard
Assistant United States Attorney
United States Attorney's Office
District of Rhode Island
50 Kennedy Plaza
Providence, RI 02903

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

6/29/23
Date

Carl Dierker
Regional Counsel
U.S. Environmental Protection Agency, Region 1

6/9/2023
Date

Catherine Smith
Senior Enforcement Counsel
U.S. Environmental Protection Agency, Region 1
Office of Regional Counsel

31

FOR TAYLOR FARMS NEW ENGLAND, INC.

6/26/23
Date

John Mazzei
Secretary
Taylor Farms New England, Inc.

**Appendix 1**

| Affiliated Entities | Affiliated Facilities/Address |
|---|---|
| Taylor Farms California, Inc. | 4375 E. Gila Ridge Road<br>Yuma, AZ 85365 |
| Taylor Farms California, Inc. | 1075 Abbott Street<br>Salinas, CA 93901 |
| Taylor Farms California, Inc. | 1207 Abbott Street<br>Salinas, CA 93901 |
| Taylor Farms California, Inc. | 1275 Hansen Street<br>Salinas, CA 93901 |
| Taylor Farms California, Inc. | 1400 Schilling Place<br>Salinas, CA 93901 |
| Taylor Farms Retail, Inc. | 3701 S. Avenue 3 1/2 E<br>Yuma, AZ 85365 |
| Taylor Farms Retail, Inc. | 4250 S. Avenue 3 1/2 E<br>Yuma, AZ 85365 |
| Taylor Farms Retail, Inc. | 1721 San Juan Highway<br>San Juan Bautista, CA 95045 |
| Taylor Farms Retail, Inc. | 4575 W Main Street<br>Guadalupe, CA 93434 |
| Taylor Farms Retail, Inc. | 110 Puente Del Monte<br>Gonzales, CA 93925 |
| Taylor Farms Pacific, Inc. | 1820 N. MacArthur<br>Tracy, CA 95376 |
| Taylor Farms Colorado, Inc. | 890 N. Newport Road<br>Colorado Springs, CO 80916 |
| Taylor Farms Texas, Inc. | 1171 N. Cockrell Road<br>Dallas, TX 75211 |
| Taylor Farms Tennessee, Inc. | 199 Sam Ridley Parkway East<br>Smyrna, TN 37167 |
| Taylor Farms Kentucky, Inc | 3776 Lake Park Drive #1<br>Covington, KY 41017 |
| Taylor Farms Maryland, Inc. | 9055 Junction Drive<br>Annapolis Junction, MD 20701 |
| Taylor Farms Florida, Inc. | 7520 Chancellor Drive<br>Orlando, FL 32809 |
| Crunch Pak, LLC | 300 Sunset Hwy<br>Cashmere, WA 98815 |
| Food Service Slicing, LLC | 215 South 1st Ave<br>Selah, WA 98942 |

**Appendix 2**

| IIAR 9-2020 Minimum System Safety Evaluation | Gaps | Actions | Date Completed |
|---|---|---|---|
| **System Documentation: System documentation shall be obtained, maintained, and on-file at the facility** | | | |
| Refrigeration System Flow Diagram(s) and/or Piping and Instrumentation Drawing(s) (P&IDs) | | | |
| Block Flow Diagram(s) or Simplified Process Flow Diagram(s) | | | |
| Machinery Room Electrical Classification Documentation | | | |
| Safety Relief System Design and Design Basis | | | |
| Machinery Room Ventilation Design Basis and Calculations | | | |
| Material and Energy Balance | | | |
| Maximum Intended Inventory | | | |
| | | | |
| | | | |
| **Equipment and System Components Documentation: Equipment documentation and system component documentation shall be obtained and on-file at the facility.** | | | |
| Manufacturer Data Report(s) | | | |
| Compressor oil separator | | | |
| Compressor oil cooler (if applicable) | | | |
| Condenser (if applicable) | | | |
| Pressure Vessel | | | |
| Heat Exchanger (if applicable) | | | |
| Materials of construction | | | |
| Compressor | | | |
| Condenser | | | |
| Evaporator | | | |
| Auto Purger | | | |
| Pump | | | |
| Heat Exchanger | | | |
| Manufacturer Product Documentation | | | |
| Valves | | | |
| Instrumentation | | | |
| Controls | | | |
| | | | |
| **Inspection, Testing, and Maintenance; All equipment and system components shall be inspected, tested, and maintained in compliance with ANSI / IIAR 6 (2019).** | | | |
| | | | |
| **System and Equipment Operation: Operating procedures shall be developed in compliance with ANSI / IIAR 7 (2019).** | | | |
| | | | |
| **Location of Ammonia Refrigeration Machinery** | | | |
| **Outdoor Installations.** Ammonia refrigeration machinery shall be permitted to be installed outdoors. Ammonia refrigeration machinery, other than piping, installed outdoors shall be located not less than 20 ft from building openings, except for openings to a machinery room or openings to an industrial occupancy. | | | |
| **Industrial Occupancies.** The following ammonia refrigeration machinery shall be permitted to be installed outside of a machinery room in industrial occupancies. | | | |
| Evaporators used for refrigeration or dehumidification. | | | |
| Condensers used for heating the space in which they are located. | | | |
| Low-probability pumps. | | | |
| Valves, including but not limited to control and pressure-relief valves, and connecting piping, any of which are associated with above. | | | |
| An ammonia refrigeration system or portions thereof with a total connected compressor drive power not exceeding 100 HP. | | | |
| | | | |

| IIAR 9-2020 Minimum System Safety Evaluation | Gaps | Actions | Date Completed |
|---|---|---|---|
| **Anhydrous Ammonia Specification: Refrigerant-Grade Ammonia.** Refrigerant-grade anhydrous ammonia that meets or exceeds the minimum requirements of IIAR 9 shall be used for the refilling of the system to the operating inventory. | | | |
| | | | |
| **Minimum System Pressure Ratings** | | | |
| General | | | |
| 1)   **Allowance for Pressure-Limiting and Pressure-Relief Devices.** In evaluating the design pressure for existing systems, an allowance shall be provided for setting pressure-limiting devices and pressure- relief devices to avoid equipment shutdown or loss of ammonia during normal operation. | | | |
| 2)   **Equipment and Piping Connected to a Pressure Vessel.** Equipment and piping connected to pressure vessels and subject to the same pressure as the pressure vessel shall have a design pressure that is equal to or greater than the set pressure of the pressure relief protection for the pressure vessel. | | | |
| 3)   **Compressors Used as Boosters.** Compressors used as boosters and discharging into the suction side of another compressor shall be considered as part of the low-pressure side for the purposes of determining the design pressure. | | | |
| 4)   **Low-pressure side:** 150 psig  EXCEPTION: When ammonia liquid is to be transferred from pressure vessels by pressurized ammonia gas, the pressure vessel design pressure shall accommodate the maximum possible transfer pressure and take into account the lowest possible coincident metal temperature | | | |
| 5)   **High-pressure side of water-cooled systems:** 250 psig | | | |
| 6)   **High-pressure side of evaporatively-cooled systems:** 250 psig | | | |
| 7)   **High-pressure side of air-cooled systems:** 300 psig | | | |
| | | | |
| **System Temperature.** Equipment shall be rated to operate within the full range of temperatures associated with the system rating and for the full range of ambient temperatures to which equipment will be exposed at the installation location. | | | |
| | | | |
| **Purging.** Means shall be provided to remove air and other non-condensable gases from the refrigeration system. | | | |
| | | | |
| **Oil Management: Provisions shall be made for removing oil from locations in piping and equipment where oil accumulation is expected.** | | | |
| **Compressors.** Compressor packages shall have a means to sample oil for periodic oil analysis when required by the manufacturer's recommendations. | | | |
| **Oil Removal.** Oil removal shall be accomplished by one or more of the following: | | | |
| 1)   A rigid-piped oil return or transfer system. | | | |
| 2)   A vessel equipped with a shut-off valve in series with a self-closing shut-off valve. | | | |
| 3)   A valve and piping assembly at the drain point where oil is removed from the system. At a minimum, a shut-off valve in series with a self- closing shut-off valve is required. | | | |
| **Temporary Piping.** Where draining of oil requires the use of temporarily attached rigid piping, such piping shall be supported and shall have tight connections. | | | |
| | | | |
| **Insulation** | | | |
| **Condensation and Frost Control.** Piping and equipment surfaces not intended for heat exchange shall be insulated, treated, or otherwise protected to mitigate condensation and excessive frost buildup where the surface temperature is below the dew point of the surrounding air during normal operation and in an area where condensation and frost could develop and become a hazard to occupants or cause damage to the structure, electrical equipment, or refrigeration system. | | | |
| **EXCEPTIONS:** | | | |
| 1.  Valve groups and other equipment shall be permitted to be uninsulated where necessary for service access provided that the vapor retarder is sealed to the piping or equipment where insulation of adjoining piping terminates. | | | |
| 2.  Piping and fittings constructed of corrosion-resistant materials or protected with a corrosion-resistant treatment shall be permitted to be uninsulated if they are routinely defrosted or are otherwise managed to limit ice accumulation. Where defrost will be the method of ice control, a means to control and drain condensate shall be provided. | | | |

| IIAR 9-2020 Minimum System Safety Evaluation | Gaps | Actions | Date Completed |
|---|---|---|---|
| | | | |
| **Foundations, Piping, Tubing, and Equipment Supports:** Piping, tubing, and equipment shall be supported to prevent excessive vibration and movement. | | | |
| | | | |
| **Service Provisions** | | | |
| **General.** A clear and unobstructed approach and space provided to refrigerating machinery for inspection, service, and emergency shutdown | | | |
| **Charging Connection Security.** Refrigeration system charging connections shall be plugged or capped. When located outdoors, they shall be locked or otherwise restricted to access by authorized personnel. | | | |
| **Pressure Gauges.** Where a pressure gauge is installed on the high side of the refrigeration system, the gauge shall be capable of measuring and displaying not less than 120% of the system rated pressure. | | | |
| **Service Isolation Valves.** Serviceable equipment shall have manual isolation valves. | | | |
| **EXCEPTION:** Packaged systems and portions of built-up systems shall be permitted to have pump-down arrangements that provide for the removal or isolation of ammonia for servicing one or more devices in lieu of isolation valves. | | | |
| **Equipment Pumpout.** Provisions for pumpout of equipment and control valves shall be provided for maintenance and service | | | |
| | | | |
| **Signage, Labels, Pipe Marking, and Wind Indicators.** | | | |
| **Machinery Room Signage.** Signage shall be provided in accordance with this section. | | | |
| 1) **NFPA 704 Placards.** Buildings and facilities with refrigeration systems shall be provided with placards in accordance with NFPA 704 | | | |
| 2) **Alarm Signage.** The meaning of each alarm shall be clearly marked by signage near the visual and audible alarms. | | | |
| 3) **Restricted Access Signage.** Each machinery room entrance door shall be marked with a permanent sign to indicate that only authorized personnel are permitted to enter the room. | | | |
| **Machinery Labels.** Refrigeration machinery shall be provided with labels. | | | |
| **Emergency Shutdown Valve Identification and Tagging.** Valves required for emergency shutdown of the system shall be clearly and uniquely identified at the valve itself and in the system schematic drawings. | | | |
| **Pipe Marking.** Ammonia piping mains, headers, and branches shall be identified with the following information: | | | |
| 1) "AMMONIA" | | | |
| 2) Physical state of the ammonia | | | |
| 3) Relative pressure level of ammonia, being low or high as applicable | | | |
| 4) Pipe service, which shall be permitted to be abbreviated | | | |
| 5) Direction of flow | | | |
| **Wind Indicator.** A sock, pennant, or other wind indicator shall be provided in accordance with specification and locations prescribed by emergency planning documents. | | | |
| | | | |
| **Emergency Shutdown Documentation.** It shall be the duty of the person in charge of the premises at which the refrigeration system is installed to provide directions for the emergency shutdown of the system at a location that is readily accessible to trained refrigeration system staff and trained emergency responders. Schematic drawings or signage shall include the following: | | | |
| Instructions with details and steps for shutting down the system in an emergency. | | | |
| The name and telephone numbers of the refrigeration operating and maintenance staff | | | |
| The names and telephone numbers of all corporate, local, state, and federal agencies to be contacted as required in the event of a reportable incident. | | | |
| Ammonia Inventory | | | |
| Signage shall include emergency facility contact title and phone number to call in the event of an alarm or ammonia release | | | |
| | | | |

| IIAR 9-2020 Minimum System Safety Evaluation | Gaps | Actions | Date Completed |
|---|---|---|---|
| **Equipment Enclosures** | | | |
| **General.** Enclosures for ammonia equipment shall be suitable for the installation location and shall be provided with protection from physical and environmental damage as required for the installed location. | | | |
| **Egress.** Operational and maintenance service egress shall be provided by access panels or doors, or shall provide for remote service by removal of the enclosure or the contents from the installed location. | | | |
| | | | |
| **General Safety Requirements** | | | |
| **Protection From Physical Damage.** Where ammonia-containing equipment is installed in a location subject to physical damage, guarding or barricading shall be provided. | | | |
| **Moving Parts.** Exposed moving parts shall be protected with screens or guards in accordance with OSHA 29 CFR 1910.212 and 29 CFR 1910.219. | | | |
| **Ammonia Storage.** Ammonia shall be stored in cylinders or vessels designed for ammonia containment. | | | |
| **Refrigeration Piping.** Refrigerant piping with an external surface temperature of 140°F (60°C) or higher and located outside the machinery room at a height less than 7.25 ft (2.2 m) above the floor, or located adjacent to passageways, aisles, walkover stairs, or landings, shall be provided with one of the following: 1) caution signs; 2) insulation; or 3) guards to prevent human contact. | | | |
| | | | |
| **General Machinery Room Requirements** | | | |
| **Construction** | | | |
| **Separation and Fire Protection.** The machinery room shall be separated from the remainder of the building by tight-fitting construction . | | | |
| **Piping Supports.** Piping supports shall carry the weight of the piping system including contents and insulation; if necessary provide sway bracing to minimize vibration. | | | |
| **Equipment Supports.** Supports and foundations shall be adequate to prevent movement of the equipment. | | | |
| **Vibration Control.** Supports and foundations shall be adequate to prevent excessive vibration of the equipment. | | | |
| **Airflow From Occupied Spaces.** Air shall not flow to or from any portion of a premises that is routinely accessible to or occupied by people on a part-time or full-time basis through a machinery room unless the air is ducted and sealed to prevent ammonia leakage from entering the airstream. Access doors and panels in ductwork and air-handling units located in a machinery room shall be gasketed and tight fitting. | | | |
| **Access and Egress.** | | | |
| **General.** Equipment installed in machinery rooms shall be located in such a manner as to allow egress from any part of the room in the event of an emergency and to provide clearances required for operation, inspection, testing, and maintenance according to manufacturers' instructions. | | | |
| **Maintenance Access.** Maintenance access shall comply with section 7.2.11.2. | | | |
| **Access to Valves** | | | |
| 1) Manually operated valves that are inaccessible from floor level shall be operable from portable platforms, fixed platforms, ladders, or shall be chain operated. | | | |
| 2) Manually operated isolation valves identified as being part of the system emergency shutdown procedure shall be directly operable from the floor or chain operated from a permanent work surface. Emergency shut-off valve identification shall comply with Section 7.2.9.3 | | | |
| **Restricted Access.** Access to a machinery room shall be restricted to authorized personnel. Signage on machinery room doors shall comply with Section 7.2.9. | | | |
| | | | |
| **Combustible Materials.** Combustible materials shall not be stored in machinery rooms outside of approved fire-rated storage containers. | | | |
| | | | |
| **Open Flames and Hot Surfaces.** Fuel-burning appliances and equipment and surfaces with temperatures exceeding 800°F shall not be installed in a machinery room. | | | |
| **EXCEPTIONS:** | | | |
| 1. Fuel-burning appliances and equipment shall be permitted in a machinery room where combustion air to the fuel-burning appliance is ducted from outside of the machinery room and sealed to prevent ammonia leakage from reaching the combustion chamber. | | | |
| 2. Fuel-burning appliances and equipment shall be permitted in a machinery room where an ammonia detector and automatically shuts off the combustion process upon detection of ammonia. | | | |
| 3. The use of matches, lighters, sulfur sticks, welding equipment, and similar portable devices shall be permitted except when charging is being performed and when oil or ammonia is being removed from the system. | | | |
| 4. Internal combustion engines powering compressors shall be permitted in a machinery room. | | | |
| | | | |

| IIAR 9-2020 Minimum System Safety Evaluation | Gaps | Actions | Date Completed |
|---|---|---|---|
| **Piping** | | | |
| **Insulation.** Piping and fittings shall be insulated as required by Section 7.2.6. | | | |
| **Pipe Penetrations.** Pipes penetrating the machinery room envelope shall be sealed to walls, ceilings, or floors through which they pass to prevent leakage of ammonia vapor to adjoining spaces and to maintain the fire rating of the machinery room envelope | | | |
| **Pipe Marking.** Piping shall be marked as required by Section 7.2.9.4. | | | |
| **Connection of Ammonia Cylinders.** Ammonia cylinders shall not be connected to a refrigeration system unless ammonia is in the process of being transferred by authorized personnel. | | | |
| | | | |
| **Eyewash / Safety Shower** | | | |
| **General.** Each machinery room shall have access to a minimum of two eyewash/safety shower units, one located inside the machinery room and one located outside of the machinery room, each meeting the requirements in Section 7.3.7.3. Additional eyewash/safety shower units shall be installed such that the path of travel in the machinery room is no more than 55 ft to an eyewash/safety shower unit. | | | |
| **Path of Travel.** The path of travel within the machinery room to at least one eyewash/safety shower unit shall be unobstructed and shall not include intervening doors. | | | |
| **Installation Standard.** Emergency eyewash/safety shower unit installations shall comply with ANSI/ISEA Z358.1. | | | |
| | | | |
| **Drains** | | | |
| **General.** Floor drains or other means shall be provided to dispose of liquids. | | | |
| **Contaminant Control.** Where a drainage system is not designed for handling oil, secondary coolants, or other liquids that might be spilled, a means shall be provided to limit such substances from entering the drainage system. | | | |
| **Control of Ammonia Spills.** A means shall be provided to limit the spread of a liquid ammonia spill into the machinery room drainage system. | | | |
| | | | |
| **Entrances and Exits** | | | |
| **General.** Machinery rooms exceeding 1,000 ft2 (93 m2) in area shall not have fewer than two exit doors or exit-access doors. Where two doors are required, one door shall be permitted to be served by a fixed ladder or an alternating tread device. Doors shall be separated by a horizontal distance equal to or greater than one-half of the maximum horizontal dimension of the room. All portions of a machinery room shall be within 150 ft (45.7 m) of an exit door or exit-access door, unless the Building Code permits an increased travel distance. | | | |
| **Door Features.** Machinery room doors shall be self-closing and tight fitting. Doors that are part of the means of egress shall be equipped with panic hardware and shall be side hinged to swing in the direction of egress for occupants leaving the machinery room. Where the machinery room is not provided with fire sprinklers, doors communicating with the building interior shall be one-hour fire rated. Doors to the outdoors shall be fire rated based on the fire rating required for exterior wall openings. | | | |
| | | | |
| **Lighting:** Machinery rooms shall be equipped with light fixtures delivering a minimum of 30 foot-candles at the working level, 36 in above a floor or platform. | | | |
| | | | |
| **Emergency Control Switches** | | | |
| **Emergency Stop Switch.** A clearly identified emergency shut-off switch with a tamper-resistant cover shall be located outside and adjacent to the designated principal machinery room door. The switch shall provide off-only control of refrigerant compressors, refrigerant pumps, and normally closed automatic refrigerant valves located in the machinery room. The function of the switch shall be clearly marked by signage near the controls. | | | |
| **Emergency Ventilation Control Switch.** A clearly identified control switch for emergency ventilation with a tamper-resistant cover shall be located outside the machinery room and adjacent to the designated principal machinery room door unless the continuous ventilation operates at a rate at or above that required for emergency ventilation. The switch shall provide "ON/AUTO" override capability for emergency ventilation. The function of the switch shall be clearly marked by signage near the controls. | | | |
| | | | |
| **Ammonia Detection and Alarms** | | | |
| **General.** Machinery rooms shall be provided with ammonia detection and alarms with the following features: | | | |
| 1) At least one ammonia detector shall be provided in the room or area. | | | |
| 2) The detector shall activate an alarm that reports to a monitored location so that corrective action can be taken. | | | |

| IIAR 9-2020 Minimum System Safety Evaluation | Gaps | Actions | Date Completed |
|---|---|---|---|
| 3)  Audible and visual alarms shall be provided inside the room. Additional audible and visual alarms shall be located outside of each entrance to the machinery room. | | | |
| **Alarm Response.** At a minimum, the machinery room alarm response shall be at an appropriate arrangement for the following to occur: | | | |
| 1)  Activates an alarm to a monitored location so an immediate response can be set in place at a detected concentration of no higher than 50 ppm (25 ppm preferred) | | | |
| 2)  Activate emergency ventilation at a detected concentration of no higher than 1000 ppm. | | | |
| 3)  Automatically de-energize determined equipment at a detected concentration no higher than 40,000 ppm (25% LFL). At a minimum, the determined equipment shall include the following: the refrigerant compressors; refrigerant pumps; and normally closed automatic refrigerant valves that are not part of an emergency control system. | | | |
| **Power for Detectors and Alarms.** The power supply for the ammonia detectors and alarms shall be a dedicated branch circuit. In the event of a loss of power on other circuits or an emergency shutdown of refrigeration equipment, the ammonia detection and alarm system shall remain on. In the event of a loss of power to the ammonia detection and alarm system, a power failure trouble signal shall be sent to a monitored location. | | | |
| **Detector Placement.** A leak detection sensor, or the inlet of a sampling tube that draws air to a leak detection sensor, shall be mounted in a position where ammonia from a leak is expected to accumulate. In rooms equipped with continuous exhaust ventilation, the leak detection sensors and sampling tubes shall take into account the air movement toward the inlet of the ventilation system. Leak detection sensors and sampling tube inlets shall be positioned where they can be accessed for maintenance and testing. | | | |
| **Alarms.** The audible alarms providing notification shall provide a sound pressure level of 15 decibels (dBA) above the average ambient sound level and 5 dBA above the maximum sound level of the area in which it is installed. | | | |
| **Signage.** Ammonia leak detection alarms shall be identified by signage adjacent to visual and audible alarm devices. | | | |
| | | | |
| **Ventilation** | | | |
| *****Ventilation for Occupants.** complies with the codes and standards adopted at the time of installation or at the time that there was an addition or modification that would affect the occupancy ventilation rate. | | | |
| **Exhaust Ventilation.** Machinery rooms shall be vented to the outdoors by means of a mechanical exhaust ventilation system. | | | |
| 1)  Mechanical exhaust ventilation system shall be automatically activated by ammonia leak detection and shall be manually operable. | | | |
| 2)  Machinery room exhaust fans, regardless of function, shall be equipped with non-sparking blades. | | | |
| 3)  Emergency exhaust fan motors located in the air stream or inside the machinery room shall be of the totally enclosed type. Fan motors meeting this requirement are not required to be listed for use in hazardous (classified) locations.. | | | |
| 4)  A monitored location shall be notified upon loss of power to, or failure of the emergency mechanical ventilation system. | | | |
| **Inlet Air** | | | |
| 1)  Make-up air shall be provided to replace air being exhausted | | | |
| 2)  Make-up air supply locations in the machinery room shall be positioned to prevent short-circuiting of the make-up air directly to the exhaust. | | | |
| 3)  Intakes for make-up air shall be positioned to draw uncontaminated outdoor air. | | | |
| 4)  Intakes for make-up air to the machinery room shall serve only the machinery room. | | | |
| 5)  Motorized louvers or dampers, where utilized, shall fail to the open position upon loss of power. | | | |
| 6)  Where direct openings or openings with ducts are not provided to supply make-up air, make-up air shall be provided by fans or fans with ducts. | | | |
| | | | |
| **General Equipment Safety Requirements** | | | |
| **Pressure Relief Protection.** Pressure vessels and other types of equipment built and stamped in accordance with ASME B&PVC, Section VIII, Division 1, shall be provided with certified pressure relief protection. | | | |
| **Atmospheric Discharge from Pressure Relief Devices.**  15 ft above grade, 20 ft from  windows, ventilation intakes, or exits and 7.25 ft above roof or work surface. | | | |
| Discharge piping has provision for draining moisture from the piping. | | | |
| **Equipment and Piping Hydrostatic Overpressure Protection Required.** Protection against overpressure due to thermal hydrostatic expansion of trapped liquid ammonia shall be provided for equipment and piping sections that can be isolated and can trap liquid ammonia in an isolated section in any of the following situations: | | | |
| Automatically during normal operation. | | | |
| Automatically during shutdown by any means, including alarm or power failure. | | | |

| IIAR 9-2020 Minimum System Safety Evaluation | Gaps | Actions | Date Completed |
|---|---|---|---|
| During planned isolation for standby or seasonal conditions. | | | |
| Due to an equipment or device fault. | | | |
| Refrigerant pumps and connected piping shall be provided with a means of protection from hydrostatic overpressure. | | | |
| **EXCEPTION:** If trapping of liquid with subsequent thermal hydrostatic expansion is only possible during maintenance or service operations, engineering or administrative controls, or both, shall be permitted as a means of relieving or preventing overpressure. | | | |
| **High-Liquid Level Shutdown.** Where a compressor suction line is directly connected to a vessel, the vessel shall incorporate a control to cause the associated compressors to shut down if a high ammonia liquid level is detected in the vessel. | | | |
| **Compressor Limiting Device.** Compressors shall be provided with high-discharge- pressure limiting device to shut down the compressors when the safe ranges are exceeded. | | | |
| **Shut-Off Valve Locations.** A shut-off valve shall be installed in the refrigerant piping at each of the following locations: | | | |
| At the inlet and outlet of a positive-displacement-type compressor, compressor unit, or condensing unit. | | | |
| At the main feed inlets and outlets of individual refrigeration equipment loads. | | | |
| At the refrigerant inlet and outlet of a pressure vessel containing liquid ammonia and having an internal gross volume exceeding 3 ft$^3$. | | | |
| **EXCEPTIONS:** | | | |
| 1.   In lieu of providing shut-off valves at each piece of serviceable equipment, packaged systems and portions of built-up systems shall be permitted to have pump-down arrangements that permit the safe removal or isolation of ammonia for servicing one or more pieces of equipment. | | | |
| 2.   Shut-off valves are not required between a refrigeration equipment load and a pressure vessel containing liquid ammonia where a single load is piped into a single pressure vessel, such as a surge-fed evaporator piped into a surge drum. | | | |
| 3.   Packaged systems that incorporate subsystem isolation valves shall not require more than one shut-off valve on each ammonia-containing pipe connecting two parts of a system. | | | |
| | | | |
| **Location of Refrigerant Piping.** | | | |
| Refrigerant piping shall not obstruct a means of egress. | | | |
| Refrigerant piping shall not be placed in an elevator shaft, dumbwaiter shaft, or other shaft containing a moving object. | | | |
| Refrigerant piping shall not be installed in a stair, landing, or means of egress that is enclosed and is accessible to the public. | | | |
| Refrigerant piping shall be permitted to be installed underground provided that the piping is protected from corrosion. | | | |
| Refrigerant piping installed in concrete floors shall be encased in pipe duct. | | | |
| | | | |
| **Instrumentation and Controls** | | | |
| **Operating Parameter Monitoring.** Instrumentation and controls shall be provided to indicate operating parameters of the refrigeration system and equipment and provide the ability to manually or automatically control the starting, stopping, and operating of the system or the equipment. | | | |
| **\*Monitoring of an Ammonia Release During a Power Failure.** A means shall be provided for monitoring the concentration of an ammonia release in the event of a power failure. | | | |
| **\*Restricted Access to Safety Settings.** Changing of safety settings shall be limited to authorized personnel only.  Changing of system operational settings shall not permit or affect changes to safety settings. | | | |
| **Electrical Control Systems.** Electrical control systems shall comply with the Electrical Code. | | | |
| **Ultimate Strength:** The pressure-containing envelope maximum allowable working pressure of instruments and visual level indicators shall be equal to or greater than the maximum allowable working pressure of the system or subsystem in which they are installed. | | | |
| **Visual Liquid Level Indicators.** Visual liquid level indicators, including but not limited to glass bull's eyes, flat "armored glass" linear sight glasses, or sight columns and pressure gauges, shall comply with this section. | | | |
| 1)   Sight glasses and linear liquid level indicators shall not be installed where a risk of hydraulic shock exists. | | | |
| 2)   Visual liquid level indicators used to observe ammonia level, such as in a vessel or heat exchanger, shall be specified for installation in a manner that provides protection from physical damage. | | | |
| 3)   \*Linear liquid level indicators shall be fitted with internal check-type shut-off valves.  Protection against accidental breakage of the glass tube from any direction shall be provided for the entire length of the tube. | | | |
| **EXCEPTION:** Liquid level indicators using bull's eye type sight glasses. | | | |
| 4)   Bull's eye sight glass types shall be compatible for use with ammonia, and the thickness and diameter shall be sized for the intended application. | | | |